# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

(To be supplied by the court)

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
1/24/2023
**JEFFREY P. COLWELL, CLERK**

CAPTAIN GRANT MITCHELL SAXENA, USA, RETIRED,
Plaintiff

v.

1. GARY M. JACKSON

2. MELISSA T. ANNIS

3. ZACHARY BANKS

4. DORIS E. BURD

5. COUNTY OF DENVER COLORADO

6. CITY OF DENVER COLORADO

7. MARK M. ALLEN

8. CHRISTOPHER JAY BAUMANN

9. KENNETH BOYD

10. CHRISTOPHER W. BROWN

11. GEORGIA CAMERON

12. BRIAN T. CAMPBELL

13. AILEEN CHONG

14. DENVER POLICE DEPARTMENT

15. DENVER SHERIFF DEPARTMENT

16. ANDREA EDDY

17. <u>DENVER DISTRICT ATTORNEY OFFICE</u>

18. <u>MICHELLE L. FOLMAR</u>

19. <u>CLARISSE GONZALES</u>

20. <u>MICHAEL GUNTER</u>

21. <u>MARY LOUISE HALL</u>

22. <u>ALFRED C. HARRELL</u>

23. <u>LORI HARTLEY</u>

24. <u>LEONARD R. HIGDON</u>

25. <u>DANIELLE KAY KUNZE</u>

26. <u>MEAGAN K. MOODIE</u>

27. <u>TIMOTHY LAWS</u>

28. <u>RACHEL LOPEZ</u>

29. <u>CHELSEA MALONE</u>

30. <u>KRIS MARTINEZ</u>

31. <u>KASHEN MATHERS</u>

32. <u>DANIEL MEADOWS</u>

33. <u>BETH MCCANN</u>

34. <u>ANTHONY MONTOYA</u>

35. <u>RACHEL ROBINSON</u>

36. <u>ALLISON ROCKER</u>

37. <u>FREDERIC B. RODGERS</u>

38. <u>STEPHANY SUZANNE-OPIEL</u>

39. <u>CHRISTOPHER VALKO</u>

40. <u>MICHAEL JAMES VALLEJOS,</u>

41. <u>DENVER POLICE DEPARTMENT DISTRICT 4 OFFICER WEST</u>

Defendant(s).

(*List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names of the defendants listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.*)

## COMPLAINT

<table>
<tr><td>

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**
</td></tr>
</table>

### A.       PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Dr. Grant Mitchell Saxena

Pro Se
275 New North Road, #2051
London, N1 7AA
+1-303-941-8772
grant.saxena25@law.ac.uk

**B.      DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendants in Alphabetical Order:

Defendant 1:
GARY JACKSON
Lindsey-Flanigan Courthouse
520 W Colfax Ave, Room 3B
Denver, CO 80204
(720) 865-7800


Defendant 2:
MELISSA T. ANNIS
Lindsey-Flanigan Courthouse
520 W Colfax Ave, Room 3B
Denver, CO 80204
(720) 865-7800

Defendant 3:
ZACHARY BANKS
2031 Holly St,
Denver, CO 80207-3840

Defendant 4:
DORIS E. BURD
Lindsey-Flanigan Courthouse
520 W Colfax Ave, Room 3B
Denver, CO 80204
(720) 865-7800

Defendant 5:
COUNTY OF DENVER COLORADO
1437 BANNOCK ST
DENVER, CO 80202

Defendant 6:
CITY OF DENVER COLORADO
1437 BANNOCK ST, RM 135
DENVER, CO 80202

Defendant 7:
<u>MARK M. ALLEN</u>
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

Defendant 8:
<u>CHRISTOPHER JAY BAUMANN</u>
1437 BANNOCK ST, RM 259
DENVER, CO 80202

Defendant 9:
<u>KENNETH BOYD</u>
Denver District Attorney's Office
201 W. Colfax Avenue
Denver Co, 80202
720-913-9149 (O) | 720-913-9035 (F)

<u>Defendant 10:</u>
<u>CHRISTOPHER W. BROWN</u>
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

<u>Defendant 11:</u>
<u>GEORGIA CAMERON</u>
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

<u>Defendant 12:</u>
<u>BRIAN T. CAMPBELL</u>
Lindsey-Flanigan Courthouse
520 W Colfax Ave, Room 3B
Denver, CO 80204
(720) 865-7800

Defendant 13:
<u>AILEEN CHONG</u>
Denver District Attorney's Office
201 W. Colfax Avenue
Denver Co, 80202
720-913-9149 (O) | 720-913-9035 (F)

Defendant 14:
DENVER POLICE DEPARTMENT
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

Defendant 15:
DENVER SHERIFF DEPARTMENT
490 W. Colfax Avenue
Denver, CO 80202

Defendant 16:
ANDREA EDDY
1437 BANNOCK ST, RM 135
DENVER, CO 80202

Defendant 17:
DENVER DISTRICT ATTORNEY OFFICE
Denver District Attorney's Office
201 W. Colfax Avenue
Denver Co, 80202
720-913-9149 (O) | 720-913-9035 (F)

Defendant 18:
MICHELLE L. FOLMAR
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

Defendant 19:
CLARISSE GONZALES
Lindsey-Flanigan Courthouse
520 W Colfax Ave, Room 3B
Denver, CO 80204
(720) 865-7800

Defendant 20:
MICHAEL GUNTER
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

Defendant 21:
MARY LOUISE HALL
1018 W. 10TH AVE.
DENVER, CO 80204

Defendant 22:
ALFRED C. HARRELL
Lindsey-Flanigan Courthouse
520 W Colfax Ave, Room 3B
Denver, CO 80204
(720) 865-7800

Defendant 23:
LORI HARTLEY
201 W. Colfax Ave., Dept 1207
Denver, CO 80202

Defendant 24:
LEONARD R. HIGDON
6565 S Dayton St Suite 3650,
Greenwood Village, CO 80111

Defendant 25:
DANIELLE KAY KUNZE
615 ALTER ST. #2-101
Broomfield, CO 80020

Defendant 26:
MEAGAN K. MOODIE
650 S Cherry Street, Suite 500,
Denver, CO 80246

Defendant 27:
TIMOTHY LAWS
1437 BANNOCK ST, RM 135
DENVER, CO 80202

Defendant 28:
RACHEL LOPEZ
Denver District Attorney's Office
201 W. Colfax Avenue
Denver Co, 80202
720-913-9149 (O) | 720-913-9035 (F)

Defendant 29:
<u>CHELSEA MALONE</u>
1437 BANNOCK ST, RM 135
DENVER, CO 80202

Defendant 30:
<u>KRIS MARTINEZ</u>
Lindsey-Flanigan Courthouse
520 W Colfax Ave
Denver, CO 80204
(720) 865-7800

Defendant 31:
<u>KASHEN MATHERS</u>
1685 S Colorado Blvd. Ste S-180
Denver, CO 80222

Defendant 32:
<u>DANIEL MEADOWS</u>
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

Defendant 33:
<u>BETH MCCANN</u>
Denver District Attorney's Office
201 W. Colfax Avenue
Denver Co, 80202
720-913-9149 (O) | 720-913-9035 (F)

Defendant 34:
<u>ANTHONY MONTOYA</u>
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

Defendant 35:
<u>RACHEL ROBINSON</u>
Denver District Attorney's Office
201 W. Colfax Avenue
Denver Co, 80202
720-913-9149 (O) | 720-913-9035 (F)

Defendant 36:
<u>ALLISON ROCKER</u>
Denver District Attorney's Office
201 W. Colfax Avenue
Denver Co, 80202
720-913-9149 (O) | 720-913-9035 (F)

Defendant 37:
<u>FREDERIC B. RODGERS</u>
Lindsey-Flanigan Courthouse
520 W Colfax Ave, Room 3B
Denver, CO 80204
(720) 865-7800

Defendant 38:
<u>STEPHANY SUZANNE-OPIEL</u>
5610 Ward Rd,
Arvada, CO 80002

Defendant 39:
<u>CHRISTOPHER VALKO</u>
Denver Police Department
1331 Cherokee Street
Denver, CO 80204
720-913-1311

Defendant 40:
<u>MICHAEL JAMES VALLEJOS</u>
1437 BANNOCK ST
DENVER, CO 80202

Defendant 41:
<u>DENVER POLICE DEPARTMENT DISTRICT 4 OFFICER WEST</u>
2100 S Clay St,
Denver, CO 80219

**C.    JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

10

 __X__   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

Lists the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

## 42 U.S. Code § 1983 - Civil action for deprivation of rights

____   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of <u>International Asylum                              </u>.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of  <u>Colorado.</u>

Defendant 1 has its principal place of business in <u>Colorado.</u>

(*If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.*)

GARY M. JACKSON  is a resident of Colorado.

MELISSA T. ANNIS  is a resident of Colorado.

ZACHARY BANKS  is a resident of Colorado.

DORIS E. BURD  is a resident of Colorado.

COUNTY OF DENVER COLORADO  is a resident of Colorado.

CITY OF DENVER COLORADO is a resident of Colorado.

MARK M. ALLEN is a resident of Colorado.

CHRISTOPHER JAY BAUMANN is a resident of Colorado.

KENNETH BOYD is a resident of Colorado.

CHRISTOPHER W. BROWN is a resident of Colorado.

GEORGIA CAMERON is a resident of Colorado.

BRIAN T. CAMPBELL is a resident of Colorado.

AILEEN CHONG is a resident of Colorado.

DENVER POLICE DEPARTMENT  is a resident of Colorado.

DENVER SHERIFF DEPARTMENT is a resident of Colorado.

ANDREA EDDY  is a resident of Colorado.

DENVER DISTRICT ATTORNEY OFFICE is a resident of Colorado.

MICHELLE L. FOLMAR is a resident of Colorado.

CLARISSE GONZALES is a resident of Colorado.

MICHAEL GUNTER is a resident of Colorado.

MARY LOUISE HALL is a resident of Colorado.

ALFRED C. HARRELL is a resident of Colorado.

LORI HARTLEY is a resident of Colorado.

LEONARD R. HIGDON is a resident of Colorado.

DANIELLE KAY KUNZE is a resident of Colorado.

MEAGAN K. MOODIE is a resident of Colorado.

TIMOTHY LAWS  is a resident of Colorado.

RACHEL LOPEZ  is a resident of Colorado.

CHELSEA MALONE is a resident of Colorado.

KRIS MARTINEZ is a resident of Colorado.

KASHEN MATHERS is a resident of Colorado.

DANIEL MEADOWS is a resident of Colorado.

BETH MCCANN is a resident of Colorado.

ANTHONY MONTOYA is a resident of Colorado.

RACHEL ROBINSON is a resident of Colorado.

ALLISON ROCKER is a resident of Colorado.

FREDERIC B. RODGERS is a resident of Colorado.

STEPHANY SUZANNE-OPIEL is a resident of Colorado.

CHRISTOPHER VALKO is a resident of Colorado.

MICHAEL JAMES VALLEJOS  is a resident of Colorado.

DENVER POLICE DEPARTMENT DISTRICT 4 OFFICER WEST  is a resident of Colorado.


 **D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that*

*claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: 42 U.S. Code § 1983 - Civil action for deprivation of rights

Supporting facts:

**NOW COMES the Plaintiff**, Dr. Saxena, an honorably discharged and Veterans Affairs federally and social security rated 100% permanent and totally service-disabled Veteran and U.S. Army Retired Captain, law school graduate and martriculating Doctor of Philosophy, who states the following:

1. Dr. Saxena was falsely arrested under the color of law at 2652 King St. on 04/01/2018 by Denver Police Department employees Michael Gunter, Daniel Meadows, and Christopher Valko.

2. This false record created was then used by a total of forty-one (41),  named Denver County employees, agents of the state, conspirators of the state, public officials and governmental organizations to continuously abuse for an indefinite period of time, as recently as January of 2023, plus maliciously deprive the basic civil rights of Dr. Saxena as provided by the United States Constitution which includes safety from cruel and unusual punishment.

3. Dr. Saxena initially called as a Victim in his own home for help to Officer Meadows personal cellphone, to report the crime of property destruction, trespassing, narcotic solicitation and domestic violence by Danielle Kay Kunze in April of 2018.

4. Officers Gunter, Valko, and Meadows responded by fabricating evidence, falsifying facts, and inventing hearsay on official reports maliciously and falsely charging plus arresting Dr. Saxena.

5. Despite Dr. Saxena's truthful statements and evidence that he had been assaulted and attacked by the aggressor Ms. Kunze, who was on probation for pleading guilty to assaulting her domestic partner in Thornton, CO, Denver County's corrupt Denver Police Department employees Gunter, Valko, and Meadows did not detain the correct person of interest.

6. Denver Police Department falsely arrested and confessed written retaliation against Dr. Saxena, due to a series of calls made and many complaints in the weeks prior about additional lack of service as a Veteran and Victim of a Felon Jesse J. Cummins.

7. Officer Meadows and his Sergeant were allowed to trespass and ruin a backyard event with Dr. Saxena's elderly father, to search his vehicle under the color of law based on a harassing civil standby from a woman unknown to Dr. Saxena.

8. Meadows fabricated facts to a 9/11 operator stating that "Dr. Saxena is confrontational with officers and has problems with many females" as a way to slander Dr. Saxena, when he was the Victim calling for help.

   a. How can a civilian who is cooperating with an illegal request from the local paid militia, through an unknown third-party, be considered confrontational?

   b. Dr. Saxena and his family were extremely cooperative during Denver Police Department's first civil rights violation at Dr. Saxena's home of 2652 King St., yet Meadows lied to the CAD operator to build a flimsy case against Dr. Saxena before officers responded on 04/01/2018.

   c. Meadow's intentional lie shows the basic malice as their badge of service, Denver Police Department has shown Dr. Saxena since arriving home as a disabled veteran in 2011.

   d. Denver Police Department has contempt for all Veterans and systematically plus habitually places them in guilty before innocent positions, through color of authority civil rights violations.

9. Two days later in 2018 on 04/03/2018, the false felony charge had been dropped by the Denver District Attorney, from lack of evidence and a psychopathic alleged victim Kunze who could not provide a medical report whilst claiming rape.

10. The case was not sealed due to Dr. Saxena's disability and medical treatments required after the abuse suffered by the false imprisonment from Denver Police Department, until in 2021.

11. Yet, no action has ever been taken by the Denver District Attorney Office to prosecute the aggressor Kunze, even though she was on probation for the exact same domestic violence crime in Thornton, CO and the officers were aware of her recent violent behavior.

12. So then, deputies showed intentional disregard for their duty to treat persons equally and in a typical discriminatory sexist way, deciding initially that the veteran man must always be guilty regardless of the evidence the officers encountered.

13. Michael Gunter yelled at Dr. Saxena in the back of the squad car: "You hit someone and you're going to jail for it."

14. Apparently the innocent until proven guilty tenants of the American Constitution are not followed by local cops who use their badges and uniforms as weak tools to prosecute

their corrupt version of curbside justice.

15. Denver Police Department, including city employees Gunter, Valko and Meadows are liable for direct damages to Dr. Saxena, including bodily harm from false imprisonment as an abused 100% service-disabled veteran of the Iraq war.

16. Kunze, Suzanne, Banks, and Mathers of Elite Legal Services, then conspired with Broomfield, Boulder and Denver Counties to file hearsay based affidavits which resulted in more malicious permanent records creation through unserved case 18C2018 on Dr. Saxena to violate his civil rights of undue search and seizure, as well as freedom from cruel and unusual punishment.

17. Approximately one month later, Dr. Saxena was passing through Denver International Airport traveling from a resident country of Mexico while carrying medical devices and electronics in luggage, on 14 May 2018.

18. On 05/14/2018 - Denver County falsely arrested and held Dr. Saxena again, for an allegation brought forward from 2017, by a tampered witness Kunze conspired with, named Mary L. Hall.

19. This time, Dr. Saxena was held against his will under the threat of deadly force in Denver County's jurisdiction for eighteen (18) months until 01/26/2020.

20. **As of 2023, the County employees are still currently, actively, and maliciously prosecuting Dr. Saxena, through intentional deprivation of rights to privacy of a prior flawless record, which was obtained during his lengthy tenure as a presidentially appointed federal Department of Defense Captain and Commander from the United States Military Academy at West Point. (Emphasis Added).**

21. The city and county of denver has intentionally and negligently dismissed and mishandled through Kris Martinez, Laws, and many other employees described in detail, every single filing for a case appeal, seal, seal denial appeal, multiple motions for relief based on fraud, restitution claims, plus multiple motions to dismiss filed by Dr. Saxena, a law school graduate, shows undeniably clear evidence of suborning perjury to create malicious records by Hall and Kunze.

22. Underlying case 18M4752 closed on 26 January 2020, without restitution from city claims filed and sustained allegations of theft during Denver Police Department and Denver Sheriff Department internal affairs investigations from Christopher W. Brown, yet still denied by city adjuster Lori Hartley in December of 2022.

23. The County discriminates against Dr. Saxena, despite his continued track record of

flawless behavior his entire life, based on Denver County's widespread systemic prejudicial treatment of honorably discharged service-disabled Veterans.

24. Folmar and Montoya are Denver Police Department supervisors who assigned Allen to maliciously prosecute.

25. Mark Allen is a Denver Police Detective assigned to the Rose Andon center, who retired in 2020 right after committing his civil rights violation, where he suborned more false police reports through slander and witness tampering by Danielle Kay Kunze, and Mary Louise Hall, in order to violate Dr. Saxena's civil rights in an illegal investigation in which Allen used the data to apply for a false warrant under the color of law in May of 2018.  *See* US Federal District of Colorado Case Saxena v. Hall 1:22-cv-03060.

26. Officer who executed the false arrest and record creation for Mr. Allen's invalid warrant is P05076, Jordan Gabriel.

27. The Denver Sheriff Department, including employee P84063 Mark Allen, then stole Dr. Saxena's backpack and all contents.

28. Dr. Saxena's laptop with quantum defense evidence needed for the trial, cameras, electronic devices, family heirlooms, cash, souvenirs and medical devices with certified stamped therapy diplomas were pilfered by Denver agents and never turned.

   a.   The monetary value of the backpack was at least $20,000.00.

29. **The evidence stolen by the police was then absent, and could not be used as a Defense by Dr. Saxena during the corrupt trial the city and county and all players orchestrated. (Emphasis Added).**

30. Allen began his actions on 23 April 2018 at 0654 am.

31. Folmar authorized the malicious prosecution on 02 May 2018.

32. Montoya instructed re-opening of the case on 11 May 2018.

33. Denver city employees Allen, Folmar and Montoya abused Dr. Saxena's due process through malicious prosecution of a 30 June 2017 first-time alleged misdemeanor three (M3) - the lowest level of crime possible in colorado above petty infractions - by processing incomplete evidence with zero forensic links to Dr. Saxena, tampering with the false-victim witness Hall during an interview, running an unauthorized background checks in National Crime Information Center, Colorado Crime Information Center, Department of Motor Vehicle, Versadex, and Facebook without probable cause, and suborning a slanderous, libel and hearsay from Kunze and Hall to base the facts of their warrant on, including tampered evidence of an alleged voice recording of Dr. Saxena.

34. 18M04752 is essentially a secondary double jeopardy charge for false arrest & sealed

case 18CR02363 involving officers Guner, Meadows, and Valko from Denver Police Department civil rights crime which is compounded in the litigation.

35. Allen, Folmart and Montoya had full direct knowledge about the external influences, conspirators Hall & Kunze, corrupting the county to seek fabricated fear based criminal charges on 11 May 2018 at 0724 AM MST, eleven (11) months late, because the false victim Hall confessed her malicious mens rea through slanderous and unprovable accusation that Dr. Saxena had strangled third parties.

36. Hall never witnessed or was present for any of the accused events which Allen used as libel in his warrant request to violation Dr. Saxena's rights.

37. However, employee Allen - who usually works as a major crimes investigator allowed his personal prejudices to persuade his professional role - by stating to Dr. Saxena during an interview, which he left out of his warrant request entirely, at the Denver jail on 14 May 2018: "he already knew Dr. Saxena wasn't making a statement and was guilty, because the un-admitted evidence he had on Dr. Saxena was rock-solid."

38. Allen said he knew Dr. Saxena was in the military and seemed to have a good head on his shoulders: so he was going to come down on Dr. Saxena harder than a normal citizen, like he would another senior cop.

   a. Allen stated words to the effect of, he was going to use Dr. Saxena as an example "to show society that peace officers are expected to behave at a higher standard."

   b. Later Allen included the libel facts from sealed case 18CR02363, changing the charges after he had applied for the warrant, so that his faulty process of law would fit into his malicious violation of civil rights under the color of authority.

   c. Allen fabricated evidence on his statement, stating that he could somehow see physical acts transpire from listening to an audio tape recording.

   d. Allen states "Towards the end of the tape, the suspect is heard breaking things and then he grabs the victim"... how could he hear me grab the victim through a tape?

      i. Someone would logically have to use vision to see someone be grabbed, the law cannot infer action through audio sound and apply for a criminal charge with inferred insufficient evidence.

      ii. Allen knew this weakness in his case, as a thirty-five (35) year tenured cop and planted libel so that his theory would stick.

   e. In reality, the state included charges to seek a warrant that were impossible to actually prove because Dr. Saxena never initiated any physical struggles and there was no forensic medical evidence to support this false allegation.

    f.   So then, Allen was negligent in identifying the false report from a slanderous victim Hall, who confessed to being tampered with by Kunze, nearly one year after the fact.

    g.   Hall made a  public statement in 2017 which was exonerating and defending Dr. Saxena, which was never investigated as evidence by the Denver District Attorney's Office.

    h.   Allen committed a civil rights violation further by writing in his warrant request that Dr. Saxena was a "multi-state offender," when in reality Dr. Saxena had never been convicted of any crime in his then entire 36 year old life.

    i.   Also Allen invented and included in the warrant, without medical records, that Dr. Saxena was a "severe PTSD Army Ranger security risk."

          i.   Allen never properly served or uploaded the original harassment summons and complaint and DA Boyd pointed out his error stating that the US&C was not a felony, so it needed to be re-submitted.

          ii.   The initial charges were not legally brought so the city fraudulently changed their paperwork after the fact to re-charge and prosecute their mistake under threats.

    j.   At the trial, Allen lied on the stand about his tampered witness interview illegally extracted twice.

    k.   Allen coaxed the alleged victim into what to say and recorded her primed and slanderously prepared interview twice.

          i.   Much like Allen's true mens rea for going after veterans to make examples of - he would not own up to his accountability on the stand.

          ii.   Allen was caught in his admittance to the second abuse of process coercive taping during his cross-examination through intelligent questions.

    l.   **As a distinguished presidentially appointed Captain with a top secret security clearance Dr. Saxena's background record was clearly attacked by a city employee who was trying to prove a point to the public.**

    m.   **Rather than obey his taxpayer funded obligations to impartiality, Allen chose to commit a civil rights violation on Dr. Saxena through submitting and maliciously prosecuting a libel based warrant.**

39. The Denver Sheriff Department did not transport Dr. Saxena to court while incarcerated during arraignment, so magistrate Annis also issued a false warrant.

      a.  This false warrant caused additional records to be created and two (2) more weeks of incarceration under color of law without just cause.

40. During the additional unwarranted jail sentence for two (2) weeks: no medical devices nor prescribed medications were given to Dr. Saxena as a 100% service-disabled veteran, which is a violation of federal rights afforded in the American Disabilities Act.

41. Boyd, Rocker, McCann, Lopez, and Robinson, Eddy, and Malone are the county attorneys and judges who violated the civil rights of Dr. Saxena through illegal search and seizure.

42. Campbell is the county judge who authorized false warrants and ordered disabled veteran abuse causing bodily harm respectively.

43. Allison Rocker is the Domestic Violence specialist District Attorney who pursued pressing charges, by applying for a malicious warrant based on false evidence and tampered witnesses.

      a.  Rocker abused due process by maliciously prosecuting a first-time alleged misdemeanor three, the lowest level of M3 crime in colorado above petty infractions: by accepting incomplete evidence with zero forensic links to Dr. Saxena from a tampered false-victim witness Hall, including irrelevant information from an illegal background check in NCIC without probable cause, and using professional credentials to acquire a slanderous and libel based warrant ten (10) months late.

      b.  18M04752 is essentially a secondary double jeopardy charge for false arrest & sealed case 18CR02363 - a District Attorney civil rights crime which is compounded in the forthcoming litigation.

      c.  Rocker had full direct knowledge about the external influences corrupting the county to seek fabricated fear based criminal charges in a tardy fashion.

      d.  However, Rocker chose to allow her personal prejudices and career aspirations to persuade her ethical role through intentional malicious prosecution which imposed undue pain and suffering on disabled veteran Captain Saxena for 2.5 years, 1 year longer than the statute of limitations of prosecution.

      e.  Rocker included the libel facts from sealed case 18CR02363, and additional libeled allegations so that when she applied for the warrant 1 year late: her faulty process of law would fit into her malicious violation of civil rights under the color of authority.

44. Kenneth Boyd is the District Attorney who decided to formally press charges based on false evidence and tampered witnesses.

    a. Boyd abused due process by maliciously prosecuting a first-time alleged misdemeanor three, the lowest level of M3 crime in colorado above petty infractions: by accepting incomplete evidence with zero forensic links to Dr. Saxena from a tampered false-victim witness Hall, including irrelevant information from an illegal background check in NCIC without probable cause, and professionally acquiring a slanderous and libel based warrant.

    b. 18M04752 is clearly a masked double jeopardy charge for false arrest & sealed case 18CR02363 - a District Attorney civil rights crime which is compounded in forthcoming litigation.

    c. Boyd had full direct knowledge about the external influences corrupting the county to seek fabricated fear based criminal charges ten (10) months late.

    d. Ultimately, Boyd wilfully allowed his personal prejudices to persuade his professional role through intentional malicious prosecution which imposed extreme undue medical pain and suffering on disabled veteran Captain Saxena for 2.5 years, 1 year longer than the statute of limitations of litigation.

    e. Boyd included the libel facts from sealed case 18CR02363, and additional libeled allegations so that when he tried the case 1 year late: his faulty process of law would fit into his malicious violation of civil rights under the illegitimate color of authority.

45. Campbell is a city employee who signed off on the fraudulently procured warrant nearly one year after the alleged incident.

46. Police at the initial scene did not make any arrests or issue citations on 06/30/2017.

47. Campbell had no authority to issue a warrant based on tardy libeled information brought forth from a tampered witness and malicious prosecution without forensics.

48. McCann is the district attorney supervisor who authorized the filing of fabricated facts on the 404B and Limine motions filed three (3) judicial days before trial.

    a. McCann oversaw the prosecution at trial and intentionally filed discriminatory motions to prevent a realistic defense from being formed or presented.

    b. If all the facts had been delivered, McCann would have lost her case because she anticipated another plea deal arrangement as per the usual 95% of criminal case conclusions.

c. When McCann realized that Dr. Saxena was taking the charges to a trial, she began inventing more violations of due process to conceal her abuse of process and faulty investigation.

d. These motions are not of a legal basis in that, they seek to hinder Dr. Saxena's defense.

e. Fundamentally, any defendant is able to bring all necessary aspects of evidence to prove their innocence.

f. The rule of law defining equity was egregiously violated by the Denver District Attorney Office and McAnn by maliciously suppressing Dr. Saxena's federal and state medical records.

49. Rachel Lopez is the city attorney who lied about known facts on the 404B and Limine items, she filed two (2) motions improperly three (3) judicial days before Trial.

a. On the 404B Lopez wrote: "Based upon prior conversations with defense counsel and on good faith belief, the People anticipate the defense counsel may ask questions of the victim that indicate she had no reason to fear the defendant would harm her physically."

b. The alleged victim was not in fear and was actively in therapy for couples counseling for her own issues and was attending Dr. Saxena's veterans affairs therapy sessions, reporting no domestic violence during this period.

c. Lopez put a tampered witness Hall on the stand who Lopez knew was inventing her true motive for pressing charges 1 year later, which were something other than fear.

d. Lopez used her credentials to violate Dr. Saxena's civil rights and his defense was crippled.

e. Dr. Saxena as I had no way to speak to the truth of the situation, using his federal medical records, once the 404b was granted.

f. The main issue with Limine motion is that the office claims "no medical evidence of disability was sent to their office, therefore a medical defense cannot be used."

g. Then how was the original warrant able to be applied for with included written statements that "Captain Saxena is an Army Ranger with 100% PTSD" and a risk?

h. More so this statement is false, because a packet of veterans affairs medical records of ongoing therapy for five (5) years by doctor and date was submitted during a plea bargaining hearing.

     i.  At this hearing, another attorney offered to add a charge of petty crime of disturbing the peace with a domestic violence enhancer.

     j.  The District Attorney's Office surrendered to my official request of deferment of all charges partially, only bargained differently to agree to the menacing charge.

     k.  Forcing Dr. Saxena's hand through a violation of rights, to withhold even a due deferred sentence by manipulating Dr. Saxena to agree to more charges was an additional abuse of process. z

     l.  Lopez sought restitution for damaged property that was not included in the case at all, through another intentional cycle of condoning witness perjury and abusing the criminal process by including potential civil claims.

     m.  At the restitution hearing, the victim was awarded damages, despite her own words and hard evidence and that she fabricated statements on the stand to Honorable Judge Rodgers, a visiting justice of the peace.

50. Robinson is the city trial attorney who was involved in publication of false facts and libel during sentencing to increase my penalties.

     a.  Robinson intentionally laughed continuously during my attorneys delivery of oral arguments and caused an unethical disruption in the courtroom.

     b.  Robinsons opening statement to the jury was "this is an easy case: you already know he's guilty."

     c.  Again, the malicious nature of Denver's discriminatory prosecution shined through versus adherence to the fundamental rule of law including fair and due process.

51. Jackson is the corrupt and anti-veteran judge who suborned perjury during his maliciously orchestrated and extremely biased trial, based on his personal prejudices, in order to maliciously prosecute honorably discharged service-disabled Veteran, Captain Saxena.

52. Jackson intentionally allowed only the prosecution's evidence and zero motions by the defense, including Dr. Saxena's ability to bring up that he served in the military and had a permanent disability at all.

     a.  Jackson also coercively tampered with the jury selection process by personally attempting to persuade one black woman, the same race as Jackson, to stay on the trial.

b.  The jury member had recently convicted her boyfriend of the same charge and told the court she could not be impartial - because she believed "if things had gotten this far and came to this level, then obviously something happened, a crime had been committed."

c.  The logic that Jackson used to trick this civilian was asking, "well, if the prosecution showed you evidence that Mr. Saxena was innocent, would you be able to vote not-guilty?"

d.  Inevitably this juxtaposition never materializes in court, because a prosecutor will move to suppress evidence of innocence before they would think of destroying their own case by intentionally disproving the state.

e.  Oddly, another veteran was a proposed jurist at selection who had been convicted of the same crime. He took the plea deal under skeptical domestic circumstances where he had been stabbed, but said during his interview that the system was geared towards targeting certain service member populations.

f.  The veteran with benefits has money to pay the fines, a background that is used discriminatorily against him in all personal relationships, and a fear of opposing perceived authority and rules.

g.  Therefore, the Denver justice system targets prosecution of these new menacing crimes, for easily predictable populations under duress like a veteran earning benefits, who are willing to take a plea deal to stay out of jail.

h.  The undeniable proliferation of the disproportionately accused and convicted veteran population was witnessed at my own trial jury selection.

i.  During trial, Jackson allowed violation of due process and was clearly sided with the prosecution, granting their motions and denying the defense (rule of completeness) - rather than being fair and impartial.

j.  Another example is sustaining every single prosecutorial objection and simultaneously overruling the defense on all occasions.

k.  Jackson personally thanked the jury members specially for their verdict reached, as a way to corruptly use his office as a tool to influence the population and its culture towards the political objectives he was appointed to cultivate for re-election goals.

l.  In the end, the veteran loses honor and the constituency gains voters.

m.  At sentencing, Jackson would not let Dr. Saxena's attorney speak, nor Dr. Saxena's family including his father who is a Ph.D. and worked for the city in the 80s as a head of engineering, and then Jackson expected Dr. Saxena to say more

than what he did under duress.

n.   Dr. Saxena said that "I took accountability for my life and that I needed therapy, so may I please stay out of jail to attend appointments.

o.   Dr. Saxena never disrespected or disagreed with the court.

p.   **Then Jackson openly called Dr. Saxena a racist in the public court and Jackson tried to illogically hang a hate crime enhancer on his opinion of the case charges.**

q.   **Jackson went on a tirade at sentence while violating Dr. Saxena's freedom of speech, saying that he knew about the military and the horrors of war, even though he never served… but from being abused by his father - who Jackson made a point to reiterate "hi**s father had three (3) bronze stars and never got help, because he didn't want to."

r.   Then Jackson quadruple maximum sentenced Dr. Saxena to (6) months jail time, one (1) year probation, max fines, thirty (30) mandatory classes in nine (9) months, daily urine analysis without underlying substance or alcohol basis, and restitution.

s.   Jackson knew Dr. Saxena had Dr medical assistance waiting in jail as a disabled veteran and needed to attend ongoing therapy at veterans affairs appointments that can take months to schedule.

t.   Yet Jackson used Dr. Saxena's own military background that he would not allow mention of as a defense through granting limine, to later justify his unprecedented punitive order sentencing Dr. Saxena to endure bodily harm, including forced manual labor at the Denver county jail.

u.   Jackson's actions were clearly due to his underlying personal grudges he manifested through a subversive exercising of a municipal level authority, all executed under basic violations of justice afforded by our American constitution and way of life, the same freedoms Dr. Saxena was permanently disabled defending overseas in Iraq at the young age of twenty-two (22).

53.  After successful completion of all civil right violations terms oppressed on Dr. Saxena as stipulations of probations to release the jurisdiction hold on the victim, in 2022, Dr. Saxena filed a valid petition to seal the conviction and to dismiss another duplicated civil protection order biasedly added at the same time of the initial charges by Malone.

54.  Two and one half (2.5) years after the alleged June 2017 singular incident occurrence, the fraudulent case closed on 26 January 2020, at which time Dr. Saxena was able to leave the jurisdiction, however the falsely created record is of a disposition which is unsealed due to civil rights violations of Gonzalez who demands medical evidence due to alleged

PTSD which the case court forbid as defense, Vallejos who denied the appeal through stating money was not sent when it was, and Baumann who denied the seal appeal stating a written opening brief had not been filed when the clerk did not certify the record to do so, and Dr. Saxena also filed a written opening brief within the post-trial and pre-appeal rebuttal which was valid.

55. Dr. Saxena is unable to apply for a visa in the United Kingdom, which is the country he earned both his Master's credentials from Oxford University and Post Graduate Diploma in Law, due to the civil rights violations, including but not limited to those by players Rodgers, Burd, and Harrell, who all conspired to seize the Plaintiff without proper due process for eighteen (18) months.

56. A triplicated frivolous lawsuit was fraudulently, wastefully, abusively, and permanently ordered by employees Malone, Eddy, and Laws who conspired with Kunze and Hall to suborn and facilitated publishing slander and libel to maliciously create permanent records.

57. On February 17th 2022, my due process and civil rights to my private sealed federal filed were violated through publishing at the hearing for dissolution in order in Denver County Court Case: 18W0570. This situation was abusively created in retaliation without evidence for motives of revenge by the Plaintiff and was legally unnecessary due to duplicity.

58. Andrea Eddy and Timothy Laws violated the Fourth and Fourteenth amendments by illegally publishing my sealed FBI background records on 2/17/2022 in Courtroom 159 of Denver County Court case 18W57 to plaintiff Mary Lousie Hall. Laws also illegally attempted to serve me on behalf of the plaintiff through three (3) separate emails, at noon after the 0900 hearing started and on his lunch break.

    a. So first, Eddy and Laws decided sua sponte to hand out my sealed and unredacted federal criminal files - which they have no authority to publish. My hard copies were never returned through the mail after filing with a self addressed catalog envelope in January of 2022. A motion to seal my FBI sealed files was denied without a logical reason stated that there "was no mechanism at the county level to seal records" which is completely false.

59. Laws delivered my filed paper version of my FBI sealed records on 2/17/2022 because the plaintiff's attorney Moodie, Esq #50369 (CO Bar Investigation: 22-539) did not forward the client the filing I served on Moodie's firm.

60. Moodie originally suborned perjury of Hall, in order to create the malicious permanent records in case 2018W57.

61. Laws simultaneously received digital files directly from the female plaintiff Hall's USB, which Timothy Laws then improperly put into the city's computer system to serve Dr. Saxena via email.

    **a.** So the plaintiff transmitted through clerk Laws, without attempting to properly serve me as per civil process rules, by electronic means containing no proper notary or other means of authentication, digital files prejudicially used in court proceedings on the official record which is in clear violation of the Colorado Rules of Civil Procedure and violates Dr. Saxena's fourth amendment rights to privacy of papers.

    **b.** Laws broke the law chargeable as criminal and civil damages, through prejudicial and malicious process service. Laws accepted and transmitted digital files containing security risks to public information systems and he published sealed federal files in order to aid the libelous plaintiff in gaining ammunition for perjury and to interfere with judicial proceedings and due process to a fair hearing.

62. Eddy denied a valid request, misquoting dates and basing her decision on hearsay from the mis-served files.

    **a.** Eddy ignored my witnesses testimony and seven (7) exhibits including expert medical evidence whilst intentionally neglecting to dissolve the fraudulent order after five (5) years of obedience. Denver county and named employees caused direct damage to Captain Grant M. Saxena, U.S.A., Retired, a known 100% disabled adult, through libelously created records via misappropriation of salary from taxpayers to misconduct duties under the color authority for more than one-half of one decade.

63. On 10/06/2022, Captain Saxena, along with his witness Dr. Saxena, met with Ms. Chong - a fledgling attorney who has been actively barred for a mere 11 months or less than (1) one year, on the 8th Floor of 201 W. Colfax Ave, Denver, CO 80202.

    **a.** Dr. Saxena traveled nearly 2,000 miles from Florida as a severely service-disabled Veteran, to appropriately address Chong's intentional suborned perjury the District Attorney's office incited through publishing sealed FBI records at a 3/21/2022 criminal seal hearing. In March of this year: Alieen Chong, who graduated from a California law school and had been barred in Colorado for a meager four (4) months, acquired Captain Saxena, USA, Retired's invalid FBI records from her impeached false-victim Hall.

    **b.** Chong then filed Capt. Saxena's sealed FBI records with Courtroom 3B at 520 W. Colfax Ave, Denver, CO, 80202, arguing to Judge Gonzales that the incomplete versions of the records, Chong did not verify, were actually valid files.

    **c.** So Chong published incorrect unsealed versions of sealed FBI criminal records to conspire with Hall. Chong provided the legal ammunition used on 3/21/2022 to slander Captain Saxena as being guilty of crimes that are impossible to prove, because the events never occurred.

    **d.**  Captain Saxena's 3/21/22 seal was denied at the hearing, because Judge Gonzalez based her findings on false information presented by Chong and Hall through their conspiracy to successfully commit perjury.

    **e.**  Ms. Chong also fabricated during the course of her professional paid duties as a city employee at the October meeting.

    **f.**  Chong accused Captain Saxena, a West Point Commissioned Officer, who passed the American Bar Association LSAT exam in 2013 yet now holds a First Law Degree from the United Kingdom and is a Doctor of Philosophy student graduating in 2023, of having not served any of the 18M4752 Appeal and Seal Appeal documents.

    **g.**  My records show private process server effectuation of process service through certified, first class, and/or faxes received by the Denver DA on all filings.

    **h.**  Chong became hostile when Captain Saxena ensured her that the proof of service existed and her office in fact received all service.

64. As a consummate professional: Dr. Saxena prides himself in efficiency and maintains meticulous records of all my legal cases.

65. As the only true victim in the incident on 06/30/2017, who is seen on a security camera photo being felony assaulted by Hall, Captain Saxena brought the picture, a victim statement, and transcripts proving Hall's perjury to the District Attorney for investigation.

66. Additional exonerating exculpatory evidence like a public statement made by Hall in July of 2017 expressing that Dr. Saxena never hurt anyone, including Hall was delivered to the District Attorney.

67. After having been directed to file directly downtown by the DPD District 4 station front desk Officer West, neither Denver Police Department nor the District Attorney have accepted my paperwork evidence as a victim.

68. Chong refused to look at the newly discovered and previously suppressed evidence in 18M4752.

69. Chong argued that I needed to go back to Denver Police District 4 to file criminal charges, because the DA's office and she would not accept the paperwork to charge the at fault parties Cummins, Kunze, and Hall.

70. Also, Chong had another person with her who did not identify herself with a business card (Roy), but seemed to be an investigator. The investigator informed Dr. Saxena that they would contact DPD District 4 station in order to ensure acceptance of Captain Saxena's criminal charge filing.

71. On 10/08/2022, Captain Saxena submitted a bar complaint against Chong for her unscrupulous actions to suborn perjury. Chong, as a rookie litigator and employee in an extremely competitive city work environment, desperately needs to win her first cases or her career as a lawyer will be shortened and very limited with opportunities.

72. Therefore, Chong is willing to break the law she swore an oath to uphold, in order to present false FBI records. Chong clearly incited perjury through Hall, in order to prevail against the Defendant Captain Saxena at his seal hearing.

73. Dr. Saxena then filed criminal charges against Cummins, Kunze, and Hall through Denver Police Department #22-553-735, around 10/28/2023, over the phone because neither Denver Police Department District 4 Officer West, nor Chong, nor anyone at the Denver District Attorney Office would take the report of crime which included clear evidence of perjury under oath by the conspirators through a transcript.

74. On 01/22/2023, Dr. Saxena called Denver Police District 4 and spoke with Officer West, who stated on a recorded line "22-553-735 had been sent to the Denver District Attorney Office, to the Domestic Violence Unit, based on a protection order issue."

75. Dr. Saxena informed Officer West that the charges were for first degree felony perjury and was forwarded to a generic detective desk number where no one answered.

76. On 01/23/2022, Dr. Saxena contacted the Denver District Attorney's Office, to gain an update of the status of the case to press charges and seek justice for the perjury.

77. District Attorney Office employee Mark Amory stated that the case had not been forwarded to their office for over ninety (90) days by Cameron.

78. Amory stated he notified Chong, and Cameron of the issue of not forwarding the felony complaint.

79. Continuous violation of Dr. Saxena's victim rights and federal liberties occur, as there is no realistic ability to gain clear and convincing evidence needed to attempt to re-file any appeals, due to the systemic discrimination faced at all stages of the broken state justice system.

80. Dr. Saxena is rated for multiple physical disabilities by social security and veterans affairs, so this abuse intentionally caused Dr. Saxena suffered extreme pain and distress during the six year ordeal, which is clearly cruel and unusual punishment, particularly during pre-trial confinement when innocence is assumed, and later during the false detainment with threat of deadly force for eighteen (18) months.

81. The medical devices have not been replaced, so Dr. Saxena has been forced to live without medical treatments for six (6) years now - which has taken a brutal toll on Dr. Saxena's overall health.

82. Therapy for physical and mental trauma inflicted by Denver, CO and employees is still ongoing with a multi-faceted veterans affairs medical team.

83. International travel and opportunities have been banned in any country requiring a background check, which is a violation of Dr. Saxena's rights to freedoms of movement.

84. Currently, Hall and her private for profit attorney Higdon are facilitating abscondence for the counterclaim suit aforementioned of defamation and perjury, to obstruct access to the clear and convincing evidence, without good cause, needed to rectify the aforementioned civil rights violations.

**E.      REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

1. Attorney fees $8,000.00, lost wages at minimum $100,000.00 - $200,000.00 annually.

2. Lack of medical attention due to deprivation of care for a disabled veteran multiple of three for treble damage theory prayer included.

3.  Captain Saxena also suffered permanent nerve damage and bodily harm to his right arm requiring medical therapy.

    a. The nerve damage resulted from months of forced jail labor executed as a vulnerable disabled veteran who was coerced without medication to engage in daily manual labor.

    b. Under medical protections ordered by social security / veterans affairs doctors and judges, Captain Saxena was not legally fit to work in the forced jail jobs, therefore entitlement to suffering relief is due.

    c. Continued intentional infliction of emotional distress through subornation of perjury to corrupt records has caused serious damage to Dr. Saxena's overall health.

4. Total amount requested equals more than $75,000.00 and is potentially upwards of $2,000,000.00.

**F.      PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.


 /s/ Dr. Grant M. Saxena  /s/

*24 January 2023*

Dr. Grant Mitchell Saxena, Ph.D. Candidate
275 New North Road, #2051
London N1, 7AA
+1-303-941-8772
grant.saxena25@law.ac.uk